United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 17, 2024

Nathan Ochsner, Clerk

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 16-33590** |
| CJ HOLDING CO., *et al.*, | § | |
| | § | **CHAPTER 11** |
| Debtors. | § | |
| | § | |
| ZAZA ENERGY LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 19-3570** |
| | § | |
| C&J SPEC-RENT SERVICES, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION

This adversary proceeding concerns whether certain insurance policies obtained by C&J Spec-Rent Services, Inc. require coverage of Zaza Energy LLC for costs incurred in a wrongful death lawsuit brought by the heirs and estate of a deceased C&J employee.

Zaza claims that provisions in a master service agreement between Zaza and C&J require C&J to indemnify Zaza for loss associated with bodily injury and death to C&J employees, with that indemnification supported by insurance procured to cover those losses. Zaza alleges that this indemnification and insurance provides coverage for the wrongful death lawsuit. After Certain Underwriters at Lloyd's, London refused Zaza's claims for coverage following settlement of the lawsuit, Zaza sued C&J and Underwriters. Zaza claims that Underwriters breached their duty to defend Zaza by failing to provide the coverage. Zaza also claims that C&J tortiously interfered with the

Lloyd's policies by influencing Underwriters to refuse to provide the contracted-for coverage. C&J and Underwriters move for summary judgment. The Court dismisses the tortious interference claim against C&J but finds that Zaza is an additional insured under the insurance policies. Underwriters' motion for summary judgment is denied because Underwriters had a duty to indemnify Zaza for the Barglsey litigation.

Zaza also moves for leave to file an untimely amended complaint. The motion is denied.

## BACKGROUND

### I. FACTUAL HISTORY

#### A. The Master Service Agreement

C&J Spec-Rent Services, Inc. is an operator in the energy industry. On February 11, 2011, C&J and Zaza Energy LLC entered into a master service agreement (the "MSA"). ECF No. 87-1 at 1. Under the MSA, C&J and its affiliates agreed to perform oilfield services for Zaza. ECF No. 87-1 at 2. The MSA specifies that Zaza is generally responsible for providing and controlling an oil site while C&J is generally responsible for its operation. ECF No. 87-1 at 2.

The MSA contains certain mutual indemnity obligations for both C&J and Zaza. ECF No. 87-1 at 4–5. At issue is the tort liability indemnity provided by C&J for Zaza's benefit. The indemnity contains the following language:

> Contractor hereby agrees to release Zaza, and to defend, indemnify and hold the Zaza Group harmless from and against any and all loss, cost, damage or expense of every kind and nature (including, without limitation, fines, penalties, remedial obligations, court costs and expenses and reasonable attorneys' fees, including attorneys' fees incurred in the enforcement of this indemnity provision (hereinafter referred to collectively as "Indemnifiable Claims")), arising out of bodily injury (including sickness to

> or death of persons and losses therefrom to relatives or
> dependents) to the Contractor Group, or loss or destruction
> of property or interests in property of the Contractor
> Group, in any manner caused by, directly or indirectly
> resulting from, incident to, connected with or arising out of
> performance of the Work, WHETHER OR NOT
> RESULTING IN WHOLE OR IN PART FROM THE
> SOLE, CONCURRENT, OR COMPARATIVE
> NEGLIGENCE, OR STRICT LIABILITY OF THE ZAZ.A
> GROUP, OR ANY DEFECT IN THE PREMISES,
> EQUIPMENT OR TOOLS OWNED, OPERATED OR
> CONTROLLED BY THE ZAZA GROUP.   Contractor
> agrees that this voluntary and mutual indemnity
> agreement will be supported by insurance of the types and
> in at least the minimum amounts required in Section 11,
> and shall be primary to any other insurance provided by
> the Zaza Group.

ECF No. 87-1 at 4–5.  "Contractor Group" is defined to include
"Contractor [C&J Spec-Rent Services Inc.], its Affiliates and
Subcontractors, and their respective directors, officers, employees,
representatives and agents."  ECF No. 87-1 at 1.  Section 11 of the MSA
contains an insurance obligation stating that C&J "shall secure and
maintain, and shall require its Subcontractors to secure and maintain,
during the term of this Agreement, the insurance coverage set forth in
Section I."  ECF No. 87-1 at 7.  The language further provides:

> ALL LIABILITY COVERAGE (INCLUDING
> EMPLOYER'S LEGAL LIABILITY) CARRIED BY
> CONTRACTOR WITH RESPECT TO THE LIABILTIES
> ASSUMED BY CONTRACTOR HEREUNDER SHALL
> EXTEND TO AND PROTECT THE ZAZA GROUP TO
> THE FULL EXTENT AND AMOUNT OF SUCH
> COVERAGE, INCLUDING EXCESS OR UMBRELLA
> INSURANCES, AND SHALL BE PRIMARY TO, AND

> RECEIVE NO CONTRIBUTION FROM, ANY OTHER
> INSURANCE OR SELF-INSURANCE PROGRAMS
> MAINTAINED BY OR ON BEHALF OF OR BENEFITING
> THE ZAZA GROUP. THE LIMITS AND COVERAGES OF
> THE INSURANCE OBTAINED BY CONTRACTOR,
> EXCEPT TO THE EXTENT PROHIBITED OR
> REQUIRED BY LAW OR STATUTE, SHALL IN NO WAY
> LIMIT THE LIABILITIES OR OBLIGATIONS ASSUMED
> BY CONTRACTOR. ALL OF CONTRACTOR'S
> LIABILITY INSURANCE POLICIES (EXCEPT FOR
> WORKER'S COMPENSATION OR EMPLOYER'S
> LIABILITY POLICIES) SHALL NAME THE ZAZA
> GROUP AS AN ADDITIONAL INSURED AND CONTAIN
> A WAIVER ON THE PART OF THE INSURER, BY
> SUBROGATION OR OTHERWISE, OF ALL RIGHTS
> AGAINST THE ZAZA GROUP.

ECF No. 87-1 at 7. The provision also states that it "shall be independent of any obligations Contractor or Zaza have under Section 10 hereof. Each party's insurance carrier(s) will provide the other party, as evidence that the required insurance coverage has been obtained, with a certificate of insurance reflecting the amount of any deductibles." ECF No. 87-1 at 8.

Schedule I sets the policies and minimum limits of liability the parties agreed C&J would obtain. ECF No. 87-3 at 1. Notably, on the form, the parties marked boxes for automobile liability insurance and worker's compensation insurance but failed to mark the box for commercial general liability insurance. ECF No. 87-3 at 1.

One June 18, 2015, C&J and Zaza entered into a Services Agreement. ECF No. 87-2. Exhibit C of the Services Agreement contains an amendment to the MSA. ECF No. 87-2 at 6. The amendment modifies language of the MSA's insurance provision. It provides that "[t]he parties agree that with regards to naming the other party as an additional insured or granting waivers of subrogation, such

additional insured status or waiver of subrogation shall only be to the extent of the obligations and liabilities assumed by the insured party under the MSA."  ECF No. 87-2 at 6.

### B.    The Insurance Policies

Lloyd's, London issued C&J primary and excess general liability policies with effective dates of March 24, 2015, through April 1, 2016. ECF Nos. 87-4 at 1; 87-5 at 1.

The primary insurance policy has a $1,000,000 limit for each occurrence, subject to a $250,000 deductible.  ECF No. 87-4 at 1.  The policy states that it "will pay those sums that the insured and any 'additional insured' as far as applicable becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies."  ECF No. 87-4 at 11.  The policy defines an "additional insured" as

> any person or entity to whom the "insured" is obliged by an "insured contract" entered into before any relevant "occurrence" to provide insurance such as is afforded by this policy with respect to "bodily injury" or "property damage" arising out of operations conducted by the "insured" but only to the extent required by any indemnity given by the "insured" in said "insured contract" to the "additional insured."

ECF No. 87-4 at 11.  An "insured contract" is defined, as applicable to this case, as

> [t]hat part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with worked performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability

> means a liability that would be imposed by law in the
> absence of any contract or agreement.

ECF No. 87-4 at 63.  Bodily injured includes death "if directly resulting
from bodily injury."  ECF No. 87-4 at 9.

The excess insurance policy provides an additional $10,000,000
coverage above a $5,000,000 self-insurance layer.  ECF No. 87-5 at 1.
The coverage of the excess policy states:

> In consideration of the payment of the premium set out in
> Item 7 of the Declarations and in reliance upon the
> proposal for this policy (hereinafter Policy), statements
> made, and any supplementary information pertaining to
> the proposal which are all incorporated herein,
> Underwriters agree, subject to the Insuring Agreements,
> Conditions, Exclusions, Definitions and Declarations
> contained in this Policy, to indemnify the "Insured" in
> respect of its operations anywhere in the World, and any
> "Additional Insured" as far as applicable for "Ultimate Net
> Loss" by reason of liability:
>
> (a) imposed upon the "Insured" by law or
>
> (b) assumed by the "Insured" under an "Insured Contract",
> for damages in respect of:
>
>> (i) "Bodily Injury"
>>
>> (ii) "Personal Injury"
>>
>> (iii) "Property Damage"
>>
>> (iv) "Advertising Injury",
>
> caused by or arising out of an "Occurrence" during the
> Policy Period as set out in Item 5 of the Declarations.
>
> Nothing contained in this Policy shall make this Policy
> subject to the terms of any other insurance.

ECF No. 87-5 at 11. "Bodily injury" includes death "if directly resulting from bodily injury." ECF No. 87-5 at 23. An "additional insured" is defined as:

> The words "Additional Insured", wherever used in this Policy, shall mean any person or entity to whom the "Insured" is obliged by an "Insured Contract" entered into before any relevant "Occurrence" and/or "Claim" to provide insurance such as is afforded by this Policy with respect to "Bodily Injury" or "Property Damage" arising out of operations conducted by the "Insured" but only to the extent required by any indemnity given by the "Insured" in said "Insured Contract" to the "Additional Insured."

ECF No. 87-5 at 22. An "insured contract" is defined as:

> The words "Insured Contract", wherever used in this Policy, shall mean any written contract entered into by the "Insured" where the "Insured" assumes the tort liability of another party to pay for "Bodily Injury" or "Property Damage" to which this Policy applies to a "Third Party". Tort liability means a liability that would be imposed by law in the absence of any written contract. Written contract includes any written indemnity agreement entered into by the "Insured" with a "Third Party".

ECF No. 87-5 at 25.

A Certificate of Insurance was issued to Zaza stating that C&J is insured under a $1,000,000 general liability policy and $10,000,000 excess liability policy.[1] ECF Nos. 87-6 at 1. The certificate also provides:

---

[1] The Court notes that the policy numbers and effective dates reflected on the certificate are different than those listed on the primary and excess liability policies issued to C&J. ECF Nos. 87-4 at 1; 87-5 at 1; 87-6 at 1. There is nothing in the record to suggest that the certificate is referring to policies different than those at issue. The certificate reflects commercial liability and excess liability coverage with the same

ALL POLICIES (EXCEPT WORKERS'
COMPENSATION/EL) INCLUDE A BLANKET
AUTOMATIC ADDITIONAL INSURED
ENDORSEMENT [PROVISION] THAT CONFERS
ADDITIONAL INSURED STATUS TO THE
CERTIFICATE HOLDER <u>ONLY IF</u> THERE IS A
WRITTEN CONTRACT BETWEEN THE NAMED
INSURED AND THE CERTIFICATE HOLDER THAT
REQUIRES THE NAMED INSURED TO NAME THE
CERTIFICATE HOLDER AS AN ADDITIONAL
INSURED. IN THE ABSENCE OF SUCH A
CONTRACTUAL OBLIGATION ON THE PART OF THE
NAMED INSURED, THE CERTIFICATE HOLDER IS
NOT AN ADDITIONAL INSURED UNDER THE POLICY.

ECF No. 87-6 at 2.

## C.    The Bargsley Litigation

In July 2015, an accident occurred on a well site owned by Zaza Energy Corporation, a Zaza affiliate, while C&J or its affiliates were performing work on the site. ECF No. 88-4 at 4–5. The accident resulted in the death of Alton Bargsley, a former employee of C&J. ECF No. 88-4 at 4–5. Bargsley's estate, heirs, and certain intervening plaintiffs commenced a wrongful death lawsuit in Texas state court in Gregg County, Texas against Zaza and others. The litigation was eventually settled. ECF No. 88-13 at 7.

In an answer to C&J's interrogatories, Zaza claims that the "Zaza Group settled the claims against them for $1,900,000." ECF No. 88-13 at 7. Zaza also answered an Underwriters interrogatory stating that there has been no allocation of settlement payments between any of the defendants in the settlement. ECF No. 87-7 at 3. Zaza also stated that

---

terms as the policies. The certificate was also issued to Zaza as required by the MSA. ECF Nos. 87-1 at 8; 87-6 at 1.

the total spent "through 01/31/24 on defense costs/expenses/attorney fees is $353,779.51, plus interest." ECF No. 87-7 at 3–4.

The merits of the Bargsley litigation are not before the court. ECF No. 67 at 2.

## II.   PROCEDURAL HISTORY

On July 20, 2016, C&J Holdings and related entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. An order directing joint administration of the cases was entered on July 21, 2016.  Case No. 16-33590, ECF No. 32.  On December 16, 2016, the Court confirmed C&J Holdings' second amended joint plan of reorganization.  Case No. 16-33590, ECF No. 1057.

On April 16, 2019, Zaza filed a lawsuit against C&J and Certain Underwriters at Lloyd's, London in Texas state court in Gregg County, Texas.  ECF Nos. 1 at 6; 1-2 at 1; 1-3 at 1–2.  On March 30, 2019, C&J removed the suit to the United States Bankruptcy Court for the Eastern District of Texas.  ECF Nos. 1; 2.  On June 19, 2019, Underwriters moved to transfer venue to this Court.  ECF No. 3.  The motion was granted on July 8, 2019.  ECF No. 4.

The removed complaint is the current operative complaint.  Zaza asserts multiple claims for relief.  Zaza's first claim seeks declarations that "(1) ZaZa and ZEC/Total/Goff are Additional Insureds; (2) Underwriters has a duty to defend and indemnify ZaZa and ZEC/Total/Goff in the Underlying Suit; (3) the Policies Provide ZaZa and ZEC/Total/Goff with the primary insurance; and (4) Defendant C&J negligently and/or intentionally interfered with Defendant Underwriters' contractual obligation to defend and indemnity ZaZa and ZEC/Total/Goff in the Underlying Suit."  ECF No. 1-3 at 11–12.  Zaza's second claim alleges against Underwriters a breach of their underlying duty to defend "by failing to pay the attorneys' fees and defense expenses ('defense costs') of ZaZa/ZEC/Total/Goff in the Underlying Suit" and "failing to indemnify ZaZa and the ZaZa Group."  ECF No. 1-3 at 12–13.  Zaza's third claim alleges against C&J a tortious interference with

contract.   ECF No. 1-3 at 13–14.   Zaza alleges C&J "had actual knowledge of the insurance relationship, including both the amounts of required coverage and the nature of required coverage but C&J refused to allow Underwriters to treat ZaZa as a separate insured and provide the contracted for coverage." ECF No. 1-3 at 13–14.

On August 7, 2020, the Court entered an agreed order bifurcating this adversary proceeding.  ECF No. 31.  C&J initially alleged that its plan of reorganization assumed and cured the MSA, thereby satisfying and releasing C&J's obligation to indemnify Zaza in connection with the Bargsley litigation.  ECF No. 1-7 at 2.  The parties agreed that this issue would be litigated first, and if C&J succeeded, that the claims involving C&J would be dismissed.  ECF No. 31 at 2.  If C&J failed, an amended scheduling order would be entered, and the claims would be addressed on their merits.  ECF No. 31 at 2.

On May 13, 2022, Zaza and C&J filed motions for summary judgment on this first issue.  On August 9, 2022, the Court entered an order denying the motions.  ECF No. 67.  In the order, the Court held that "a bankruptcy discharge does not affect a third-party insurer's obligation to pay for claims that a discharged debtor was liable for prior to discharge." ECF No. 67 at 2.  The Court also held that "[u]nder 11 U.S.C. § 365(b), the cure cost is that which is owed under the contract at the time of assumption.  The payment of the cure cost and assumption does not limit a future obligation under the assumed contract." ECF No. 67 at 2.

Pursuant to the bifurcation order, the Court signed an agreed amended scheduling order on September 5, 2023.  ECF No. 76.  The order sets the schedule for litigating Zaza's claims on their merits.  ECF No. 76 at 2.  C&J and Underwriters have now filed motions for summary judgment on Zaza's claims for relief.  ECF Nos. 87; 88.

On April 15, 2024, Zaza filed a motion for leave to amend its complaint.  ECF No. 91.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  Venue is proper in this District pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact means that evidence is such that a reasonable fact finder "could return a verdict for the nonmoving party." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  It is the movant's burden to establish that no genuine issue of material fact exists.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citing *Condrey v. SunTrust Bank of Ga.,* 429 F.3d 556, 562 (5th Cir. 2005)).  A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. Fed. R. Civ. P. 56(c)(1).  If the movant establishes "the absence of evidence supporting an essential element of the non-movant's case," the burden shifts to the non-movant to establish a genuine dispute of material fact.  *Sossamon*, 560 F.3d at 326 (citing *Condrey*, 429 F.3d at 562).

In ruling on a motion for summary judgment, a court should view the facts and evidence in light most favorable to the non-moving party. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014).  Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Env't. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012).

"Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015). The Court need only consider the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

## DISCUSSION

Zaza raises multiple claims for relief against C&J and Underwriters. Zaza's claim against C&J for tortious interference with contract is dismissed with prejudice. Underwriters' motion for summary judgment is denied. Zaza moves for leave to amend its complaint. The motion for leave is denied.

## I. THE COURT DOES NOT ADDRESS THE CLAIMS OF ZEC/TOTAL/GOFF

The claims for relief in Zaza's complaint seek judicial findings for not only Zaza, but also Zaza Energy Corporation, Total Energy Services, LLC, and Donald Goff. Zaza's claims allege that C&J and Underwriters breached their duties to these parties to the same extent as to Zaza. ECF No. 1-3 at 11–14.

Zaza is the only plaintiff in this action. No party in this case has made any effort to join these additional parties, and no party alleges that their joinder is necessary. *See* Fed. R. Civ. P. 19, 20 (required and permissive joinder). The Court makes no findings as to the rights of parties not before the Court. *See Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a

litigation in which he is not designated as a party or to which he has not been made a party by service of process.").

Because Zaza Energy Corporation, Total Energy Services, LLC, and Donald Goff are not parties to this adversary proceeding, the Court makes no findings as to their rights.

## II.   Zaza's Tortious Interference Claim Against C&J Is Dismissed with Prejudice

Zaza's first claim for relief seeks a declaration that C&J "negligently and/or intentionally interfered with Defendant Underwriters' contractual obligations to defend and indemnify ZaZa and ZEC/Total/Goff in the Underlying suit." ECF No. 1-3 at 12.  Zaza's third claim for relief asserts against C&J a cause of action for tortious interference with contract.  ECF No. 1-3 at 13.  Zaza alleges that C&J interfered with Zaza's rights to indemnity as an additional insured under the insurance policies by "refus[ing] to allow Underwriters to treat ZaZa as a separate insured and provide the contracted for coverage."  ECF No. 1-3 at 12.  Zaza argues that Underwriters had initially stated they would indemnify Zaza for the Bargsley litigation, but they later refused the indemnification after C&J instructed Underwriters that they had no duty to indemnify Zaza.  ECF No. 1-3 at 10–11.

"To establish a claim for tortious interference with a contract, a plaintiff must establish: (1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss." *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).  It is well settled that "[t]o be legally capable of tortious interference, the defendant must be a stranger to the contract with which he allegedly interfered." *Id.* at 690.  "By definition, the person who induces the breach cannot be a contracting party." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995).

Zaza alleges that C&J interfered with its rights to indemnification under the primary and excess insurance policies. Zaza is not a named insured under the policies. Its only rights under those policies would be as an additional insured. Moreover, C&J is a named insured and is thereby a party to those insurance policies. *See Loda Agency, Inc. v. Nationwide Ins. Co.*, No. 3:001750, 2000 WL 1849865, at *1, 4 (D. Conn. Oct. 10, 2000); ECF Nos. 87-4 at 1, 5; 87-5 at 1, 5. By definition, as a contracting party, C&J is not able to interfere with its own contract.

Zaza claims the general rule should not apply because C&J is only "nominally a party to the Policies which were procured as a substitute for Debtor's liability under the MSA." ECF No. 90 at 2–3. Zaza also claims that the general rule should not apply when a contracting party interferes with a third-party beneficiary's rights under the contract. ECF No. 90 at 3–4. Neither of these arguments justify departing from the general rule. As a matter of law, the obligation not to interfere with existing contracts is not an obligation imposed on parties to a contract. *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761–62 (Tex. 2006). This rule applies regardless of a contracting party's role in a contract or whether the party interfered with the rights of a third-party beneficiary. *See Bramlett v. The Med. Protective Co. of Fort Wayne, Ind.*, No. 3:10-CV-2048-D, 2011 WL 248849, at *3–4 (N.D. Tex. Jan. 26, 2011).

Zaza's first claim for relief for a declaration of tortious interference and its third claim for relief are dismissed with prejudice.

### III. UNDERWRITERS' MOTION FOR SUMMARY JUDGMENT IS DENIED

The remainder of Zaza's claims require the interpretation of the MSA and insurance policies to determine whether Zaza is insured under those policies. If Zaza was insured under the policies, the Court must determine whether Underwriters had a duty to indemnify Zaza for the costs it incurred in the Bargsley litigation.

## A. New York Law Applies to the Interpretation of the Policies and Texas Law Applies to the Interpretation of the MSA

The parties dispute whether New York law applies to the interpretation of the primary and excess insurance policies. Both the primary and excess insurance policies state that the "policy is governed by the laws of the State of New York." ECF Nos. 87-4 at 2; 87-5 at 2. There are no ambiguities in the choice of law provisions. Per the terms of the policies, New York law applies to their interpretation.

On the other hand, the MSA is governed by "the laws of the State of Texas." ECF No. 87-1 at 11. Texas law governs the interpretation of the MSA.

## B. The MSA Requires Indemnification of Zaza Supported by the Insurance Policies

Under Texas law, determining whether a contract is ambiguous "is a question of law that we decide by examining the contract as a whole in light of the circumstances present when the contract was entered." *Park v. Escalera Ranch Owners' Ass'n, Inc.*, 457 S.W.3d 571, 592 (Tex. App. 2015). "An unambiguous contract is worded in a way that can be given a certain or definite legal meaning or interpretation . . . ." *Id.* "An ambiguous contract is one that is subject to two or more reasonable interpretations after applying the pertinent rules of construction." *Id.* "We consider the parties' interpretations and admit extraneous evidence to determine the true meaning of the contract only when a contract is ambiguous." *Id.*

The parties dispute whether the MSA requires Zaza to be listed as an additional insured under the Lloyd's policies. Under Section 10.a of the MSA, C&J agrees to "release Zaza, and to defend, indemnify and hold the Zaza Group harmless from and against any and all loss, cost, damage or expense of every kind and nature . . . arising out of bodily injury . . . to the Contractor Group . . . , in any manner caused by, directly or indirectly resulting from, incident to, connected with or arising out of

performance of the Work." ECF No. 87-1 at 4. Contractor Group includes the employees of C&J. ECF No. 87-4 at 1. Bodily injury includes death. ECF No. 87-4 at 5. C&J also agreed that this indemnity "will be supported by insurance of the types and in at least the minimum amounts required in Section 11, and shall be primary to any other insurance provided by the Zaza Group." ECF No. 87-4 at 5.

Section 10.a plainly requires C&J to indemnify Zaza for any loss resulting from a suit for bodily injury or death of a C&J employee arising out of C&J's operations, and it requires that this indemnity be supported by insurance of the types and at least the minimum amounts provided under Section 11.

Section 11 contains the insurance obligation. Per its terms, it requires C&J to "secure and maintain . . . the insurance coverage set forth in Schedule I." ECF No. 87-1 at 7. Section 11 further expands the requirement, stating

> ALL LIABILITY COVERAGE (INCLUDING EMPLOYER'S LEGAL LIABILITY) CARRIED BY CONTRACTOR WITH RESPECT TO THE LIABILTIES ASSUMED BY CONTRACTOR HEREUNDER SHALL EXTEND TO AND PROTECT THE ZAZA GROUP TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE, INCLUDING EXCESS OR UMBRELLA INSURANCES, AND SHALL BE PRIMARY TO, AND RECEIVE NO CONTRIBUTION FROM, ANY OTHER INSURANCE OR SELF-INSURANCE PROGRAMS MAINTAINED BY OR ON BEHALF OF OR BENEFITING THE ZAZA GROUP. . . . ALL OF CONTRACTOR'S LIABILITY INSURANCE POLICIES (EXCEPT FOR WORKER'S COMPENSATION OR EMPLOYER'S LIABILITY POLICIES) SHALL NAME THE ZAZA GROUP AS AN ADDITIONAL INSURED.

ECF No. 87-1 at 7. Further, "[e]ach party's insurance carrier(s) will provide the other party, as evidence that the required insurance coverage has been obtained, with a certificate of insurance reflecting the amount of any deductibles." ECF No. 87-1 at 8.

Under the amendment to the MSA, "[t]he parties agree that with regards to naming the other party as additional insured . . . , such additional insured status . . . shall only be to the extent of the obligations and liabilities assumed by the insured party under the MSA." ECF No. 87-2 at 6. The amendment, on its face, makes Section 11's "additional insured" provision dependent on the Section 10.a indemnity, as this is an "obligation" assumed by C&J under the MSA. The amendment essentially revised the original Section 11 language, which stated that the insurance obligations "shall be independent of any obligations Contractor or Zaza have under Section 10 hereof." ECF No. 87-1 at 8.

Under Section 10.a, C&J agreed to indemnify Zaza for "any and all loss, cost, damage or expense" arising out of bodily injury or death to a C&J employee arising out of C&J's operations. Read together, Section 10's indemnity obligations covering "any and all loss" must be supported by the insurance obligations set forth in Section 11, which both require C&J to obtain minimum coverage under Schedule I *and* name Zaza as an additional insured under any liability insurance policy except for worker's compensation and employer's liability.

In summary, C&J was required to obtain the policies listed in Schedule I and name Zaza as an additional insured under those policies. Schedule I lists the policies that Zaza and C&J agreed C&J would obtain. Under Schedule I, the parties selected automobile liability insurance with a $2,000,000 minimum limit and worker's compensation insurance. ECF No. 87-3 at 1. Schedule I provides two options for commercial general liability insurance: one option with a $1,000,000 limit and another with a $2,000,000 limit. ECF No. 87-3 at 1. Neither is selected. ECF No. 87-3 at 1. Underwriters argue this indicates that C&J was not required to obtain any commercial general liability insurance, and as a result, "Zaza would not be an additional insured on

any commercial general liability policy issued to C&J." ECF No. 87 at 10.

The Court disagrees with this reading. Section 11 is plainly read as requiring Zaza to be named as an additional insured under all of C&J's liability insurance policies except for worker's compensation or employer's liability policies. This requirement goes beyond the policies set forth in Section I and applies to "ALL LIABILITY COVERAGE . . . CARRIED BY CONTRACTOR WITH RESPECT TO THE LIABILITIES ASSUMED BY CONTRACTOR." The Section 10.a indemnity obligation is a liability assumed by C&J. Section 10.a also falls under the "additional insured" requirement through the amendment to the MSA. Even if C&J was not required to obtain any commercial general liability insurance under Schedule I, it nevertheless obtained primary and excess general liability insurance policies that cover the tort liabilities assumed under Section 10.a.

The MSA requires Zaza to be named as an additional insured under the policies.

## C. TOAIA Does Not Limit the Commercial General Liability Insurance to $0

Underwriters assert that the Texas Oilfield Anti-Indemnity Act requires their indemnity obligation to Zaza to be $0. ECF No. 87 at 13–14. They argue that Schedule I does not require either party to maintain commercial general liability insurance. ECF No. 87 at 14. And they argue, because the MSA amendment states that additional insured status "shall only be to the extent of the obligations and liabilities assumed by the insured party under the MSA," the amendment limits the amount to which Zaza would be an additional insured for commercial general liability to Schedule I's minimum limits, which are $0. ECF No. 87 at 4.

"The TOAIA generally voids indemnity provisions which purport to indemnify a party against liability caused by the indemnitee's negligence and arising from personal injury, death, or property

damage." *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 493 (5th Cir. 2000) (citing Tex. Civ. Prac. And Rem. Code Ann. § 127.003). "However, the TOAIA contains an exception permitting indemnity provisions supported by liability insurance satisfying section 127.005." *Id.* Under § 127.005(a), the exception applies to "an agreement that provides for indemnity if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor subject to the limitations specified in Subsection (b) or (c)." In this case, the indemnity obligation under the MSA is a mutual indemnity supported by liability insurance coverage. ECF No. 87-1 at 4–5. The indemnity falls under subsection (b). Under § 127.005(b), "[w]ith respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to obtain for the benefit of the other party as indemnitee."

TOAIA limits an indemnity obligation to the amount of insurance that an indemnitor has agreed to obtain for an indemnitee's benefit. *Cimarex Energy Co. v. CP Well Testing, L.L.C.*, 26 F.4th 683, 688–690 (5th Cir. 2022). TOAIA does not prevent parties from agreeing to provide coverage beyond the minimum amount required by their MSA, so long as the court is able to find that the additional coverage is for the indemnitee's benefit. *See id.* at 688.

In *Cimarex*, the court was tasked with determining the amount of coverage CP Well provided as indemnitor to its indemnitee, Cimarex. There, under the parties' MSA, "CP Well was required to obtain a minimum of $1 million of general liability coverage and $2 million of excess liability coverage, for at least $3 million in total coverage." *Id.* CP Well actually obtained "a $1 million general liability policy and an excess liability policy with coverage limits of $10 million, i.e., $8 million more than the minimum coverage required by the MSA." *Id.* at 686. The court had to determine "how much of CP Well's additional $8 million in excess liability coverage was 'for the benefit of [Cimarex] as indemnitee.'" *Id.* at 688. The court found that there was no way to

answer this question through the terms of the parties' MSA, so it turned to the terms of the insurance policies. *Id.* at 689. Subsection E of CP Well's excess policy provided the following:

> [T]he most [the insurer] will pay for damages under this policy on behalf of any person or organization to whom [CP Well] [is] obligated by written Insured Contract to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in . . . the Declarations or the minimum Limits of Insurance [CP Well] agreed to procure in such written Insured Contract.

*Id.* at 689. The court first found that the MSA fell within the policy's definition of an "Insured Contract" through the MSA's indemnification provision. *Id.* The court accordingly determined that "[a]s an 'Insured Contract', the MSA therefore falls within the coverage limitations articulated in Subsection E of the policy." *Id.* Under Subsection E, coverage was limited to the lesser of the Limits of Insurance or the minimum Limits of Insurance agreed in the MSA. *Id.* Because the MSA's minimum limits of $3 million were less than the insurance policies' minimum limits, the MSA's limits controlled and were the amount of coverage obtained for Cimarex's benefit. *Id.* at 689–90.

In the MSA between C&J and Zaza, even assuming the parties' failure to check the box in Schedule I for minimum commercial liability insurance sets the minimum agreed amount to $0,[2] the Lloyd's insurance policies do not contain the same language that require coverage to be limited to this amount. The Lloyd's primary insurance

---

[2] The Court also notes that, even if the minimum amount of indemnity the parties agreed to under the MSA is $0, this does not void the indemnity under TOAIA. The amount of coverage need not be specified in the writing containing the indemnity agreement. *Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 351 (Tex. 2000). TOAIA also does not void an indemnity agreement retroactively if the coverage does not exist, so long as the parties "agreed in writing that the indemnity obligation will be supported by liability insurance coverage." *Nabors Corp. Servs., Inc. v. Northfield Ins. Co.*, 132 S.W.3d 90, 96–97 (Tex. App. 2004) (quoting Tex. Civ. Prac. & Rem. Code § 127.005(a)).

policy states that it "will pay those sums that the insured and any 'additional insured' as far as applicable becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies."   ECF No. 87-4 at 11.   The policy defines an "additional insured" as

> any person or entity to whom the "insured" is obliged by an "insured contract" entered into before any relevant "occurrence" to provide insurance such as is afforded by this policy with respect to "bodily injury" or "property damage" arising out of operations conducted by the "insured" but only to the extent required by any indemnity given by the "insured" in said "insured contract" to the "additional insured."

ECF No. 87-4 at 11.  An "insured contract" is defined, as applicable to this case, as

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with worked performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

ECF No. 87-4 at 63.

The MSA clearly falls within the definition of an "Insured Contract."  Section 10.a requires C&J to indemnify Zaza for losses due to liability for bodily injury to a C&J employee, which includes death resulting from bodily injury.  ECF No. 87-1 at 4.  The indemnity provision is within the policy's language covering an assumption of tort liability arising out of bodily injury.  ECF No. 87-4 at 9 (defining "bodily injury" to include death directly resulting from bodily injury).  Zaza also meets the definition of an additional insured.  Zaza is an entity to whom

C&J is obliged by the MSA to provide insurance in connection with this liability.

    With respect to the amount of coverage, the policy contains two limitations. The first is the limitation that it will pay the amounts that C&J and Zaza become "legally obligated to pay as damages because of 'bodily injury' . . . to which the insurance applies." ECF No. 87-4 at 11. The next is that Zaza maintains its additional insured status "only to the extent required by any indemnity given by the 'insured' in said 'insured contract' to the 'additional insured.'" ECF No. 87-4 at 11. Under the MSA, the extent of indemnity given to Zaza is "any and all loss, cost, damage or expense of every kind and nature . . . arising out of bodily injury . . . to the Contractor Group." ECF No. 87-1 at 4. Accordingly, under the primary policy, the amount of coverage C&J obtained for Zaza's benefit is "any and all loss" arising out of a legal obligation to pay damages for bodily injury up to the $1,000,000 policy limit, subject to other potential limitations in the policy. ECF No. 87-4 at 1.

    The result is no different with respect to the excess policy. The policy provides essentially the same definition of bodily injury coverage for additional insureds. ECF No. 87-5 at 11. It also defines an "additional insured" and "insured contract" in substantially the same manner. ECF No. 87-5 at 22, 25. Zaza is also an additional insured under the excess policy. The amount of coverage C&J obtained for Zaza's benefit is "any and all loss" arising out of a legal obligation to pay damages for bodily injury up to the $10,000,000 policy limit, subject to other potential limitations in the policy. ECF No. 87-5 at 1.

    This reading of the policies is also supported by the Certificate of Insurance. Although the certificate states that it does not confer any rights upon Zaza as certificate holder, it nevertheless provides an explanation of additional insured status that supports the Court's interpretation of the policies. ECF No. 87-6 at 1. The certificate states that C&J holds a $1,000,000 primary policy and $10,000,000 excess policy. ECF No. 87-6 at 1. It also states:

ALL POLICIES (EXCEPT WORKERS' COMPENSATION/EL) INCLUDE A BLANKET AUTOMATIC ADDITIONAL INSURED ENDORSEMENT [PROVISION] THAT CONFERS ADDITIONAL INSURED STATUS TO THE CERTIFICATE HOLDER ONLY IF THERE IS A WRITTEN CONTRACT BETWEEN THE NAMED INSURED AND THE CERTIFICATE HOLDER THAT REQUIRES THE NAMED INSURED TO NAME THE CERTIFICATE HOLDER AS AN ADDITIONAL INSURED. IN THE ABSENCE OF SUCH A CONTRACTUAL OBLIGATION ON THE PART OF THE NAMED INSURED, THE CERTIFICATE HOLDER IS NOT AN ADDITIONAL INSURED UNDER THE POLICY.

ECF No. 87-6 at 2. Section 11 of the MSA requires C&J as the named insured to list Zaza as an additional insured for insurance policies covering the Section 10.a indemnity obligation. ECF No. 87-1 at 7. The primary and excess policies fall within this requirement.

Zaza is an additional insured under both the primary and excess insurance policies, with coverage up to the policy limits.

### D. Underwriters Had a Duty to Indemnify Zaza for the Bargsley Litigation

Because Zaza is an additional insured under the insurance policies, Underwriters had a duty to indemnify Zaza for losses that fall within the coverage provided in the policies. The amount of coverage is set by the policy limits.

As a result of the Bargsley litigation, Zaza has suffered losses caused by the death of a C&J employee arising out of C&J's operations. These losses fall within the coverage provided in the insurance policies.

Because Underwriters had an unambiguous duty to indemnify Zaza for the Bargsley litigation, Underwriters' motion for summary judgment is denied.

## IV.   ZAZA'S MOTION TO AMEND IS DENIED

On April 15, 2024, Zaza moved to file an untimely amended complaint.  ECF No. 91.  The motion was filed after the entry of an amended scheduling order and after the deadlines for amended pleadings, dispositive motions, and fact discovery.   ECF No. 76 at 2. The proposed amended complaint adds a breach of contract claim against C&J.  ECF No. 91 at 20–21.  The claim alleges that "the failure of C&J to procure policies consistent with the MSA and the Servicing Agreement is a breach of contract and voids the release provisions provided therein."  ECF No. 91 at 21.

"Federal Rule of Civil Procedure 16(b) governs amendment of pleadings once a scheduling order has been issued . . . ."  *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003).  Rule 16 applies in adversary proceedings through Federal Rule of Bankruptcy Procedure 7016(a).  "Rule 16(b) provides that a scheduling order 'shall not be modified except upon a showing of good cause and by leave of the district judge.'"  *S&W Enterprises*, 315 F.3d at 535.  "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"  *Id.* (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).  Courts consider four factors in determining good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (quoting *S&W Enterprises*, 315 F.3d at 536).

With respect to the second factor, "[w]hat is called for in assessing the importance of the amendment is not just the theoretical effect of

success on the claims being asserted, but a pragmatic judgment as to the likelihood that the newly asserted claims or defenses will succeed." *Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-CV-1455, 2017 WL 119633, at *6 (E.D. Tex. Jan. 12, 2017). Zaza's proposed breach of contract claim is based on the assertion that C&J did not procure insurance policies that list Zaza as an additional insured as mandated under the MSA. The claim will not succeed in light of this memorandum opinion. C&J did secure the insurance called for in the agreement. This factor is conclusive against permitting Zaza's amendment.

Zaza's motion to amend its complaint is denied.

## CONCLUSION

The Court will enter an order consistent with this memorandum opinion.

SIGNED 05/17/2024

_____

Marvin Isgur
United States Bankruptcy Judge